Daniel K. LASHBROOK, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 79S00–0003–CR–222.

Supreme Court of Indiana.

Feb. 15, 2002.

Ross G. Thomas, Stephen W. Dillon, Dillon Law Office, Indianapolis, IN, for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, IN, for Appellee.

DICKSON, Justice.

The defendant, Daniel Lashbrook, appeals his conviction and sixty-year sentence for the September 1998, murder[1] of Duane Morton. Finding that the defendant's appellate claims of multiple evidentiary errors and excessive sentence are not compelling, we affirm.

The defendant first contends that the trial court erred in excluding evidence that a person other than the defendant had previously stated that the victim "was gonna die." As the defense began to present its case, the State requested a bench conference and moved to exclude anticipated

1. Ind.Code § 35–42–1–1.

testimony of defense witnesses that one Nicholas Perez had said that the victim, Duane Morton, was going to die or that something adverse was going to happen to him. Defense counsel informed the court that one of the witnesses "is going to say ... [that] Perez on three occasions told her that Duane was gonna die." Record at 1786. After extensive argument of counsel, the trial court indicated that this evidence would not be admitted, believing that it would violate the hearsay rule.

The defendant urges on appeal, as he did at trial, that evidence of Perez saying that Duane Morton "was gonna die" is not inadmissible hearsay evidence because it was not offered to prove Morton was going to die. Rather, the evidence is admissible, the defendant contends, "to show that Perez made the statement and, further, to show that no action was taken by the police to follow up on the alleged statements." Br. of the Appellant at 8. The defendant argues that the evidence tends to show that someone else committed the crime and that it shows that police did not follow up on all leads in its investigation, and thus that the defendant's guilt is not proved beyond a reasonable doubt.

A trial court ruling excluding evidence may not be challenged on appeal "unless a substantial right of the party is affected" and "the substance of the evidence was made known to the court by a proper offer of proof, or was apparent from the context within which questions were asked." Ind.Evidence Rule 103(a)(2). In addition, appellate review of the exclusion of evidence is not limited to the grounds stated at trial, but rather the ruling will be upheld if supported by any valid basis. *Feliciano v. State,* 477 N.E.2d 86, 88 (Ind.1985); *Moritz v. State,* 465 N.E.2d 748, 755 (Ind.App.1984).

In *Joyner v. State,* 678 N.E.2d 386, 389–90 (Ind.1997), this Court reversed the trial court's exclusion of evidence that another person may have committed the crime. In *Joyner* the defense sought to present evidence that the other person was having an affair with the victim, worked at the same place as the victim, had engaged in sexual relations with the victim the night before her disappearance, had an argument with the victim the day she was last seen alive, and came to work late the day after her disappearance, falsifying his tardiness on his time card. In stark contrast to *Joyner,* the defendant presents no material evidence that Perez was connected to the crime. The phrase allegedly uttered by Perez that Morton "was gonna die" does not tend to show that Perez committed the murder.

As to the defendant's claim that the excluded evidence should have been admitted because it tends to show an incomplete police investigation, we observe that other evidence of the same fact had been previously admitted. During the presentation of the State's case, the defense cross-examined West Lafayette Police detective Brian Lowe, and the officer stated that his investigative report reflected that some women gave him a lead that Nicholas Perez said that Duane Morton was going to die, and that the officer did not follow up by having the women interviewed. Thus the jury had already received the evidentiary facts excluded by the court's ruling now challenged. Furthermore, one of the defense witnesses later testified at trial that she was interviewed by Detective Lowe and gave him information about Perez. The defendant utilized these evidentiary facts during his closing statement to argue the presence of reasonable doubt after stating that "Detective [Lowe] testified that Detaria Goings told him that Nick [Perez] had said Duane's gonna die." Record at 1934. Thus the admission of further testimony establishing the Perez ut-

terance would have been cumulative, and its exclusion did not prevent the defendant from making the same argument to the jury.

We hold that the exclusion of further testimony that Nicholas Perez was heard to say "Duane was gonna die" did not affect a substantial right of the defendant, and thus is not a basis for finding reversible error. Evid.R. 103(a).

■ The defendant next contends that the trial court erred in admitting certain testimony regarding prior bad acts, in contravention of Indiana Evidence Rule 404(b). At trial, he objected to this testimony on grounds of relevance and did not claim any violation of Rule 404(b). A defendant may not present one ground for an objection at trial and assert a different one on appeal. *Lampkins v. State*, 682 N.E.2d 1268, 1274 (Ind.1997). This question is waived because not preserved by objection at trial. *See Williams v. State*, 690 N.E.2d 162, 166 (Ind.1997).

■ The defendant further contends that the trial court erred in admitting into evidence a pair of brass knuckles. Overruling an objection that the exhibit's prejudicial effect outweighed its probative value, the trial court allowed the evidence because it corroborated a witness's account of intimidation by the defendant. Record at 1560.

■ Trial courts are given wide latitude in weighing probative value against the danger of unfair prejudice, and we review that determination for abuse of discretion. *Houston v. State*, 730 N.E.2d 1247, 1251 (Ind.2000). One of the witnesses testified that the defendant had used the brass knuckles in an attempt to intimidate that witness into keeping quiet. The brass knuckles taken from the defendant's possession corroborated the witness's testimony. The trial court did not abuse its discretion in admitting this evidence.

■ The defendant finally contends that his sentence is manifestly unreasonable. In sentencing the defendant, the trial court discussed and found as aggravating circumstances the defendant's previous contacts with the juvenile justice system as a runaway, for possession of an explosive, and for possession of marijuana; his continued involvement in drug activity; the fact that the murder was committed the day after the court prescribed a program of rehabilitation for the defendant's admitted possession of marijuana and being a runaway; the defendant's probation status at the time of the crime; the nature and motive for the murder; the likelihood that the defendant would re-offend; and the recommendation of the family that the sentence be aggravated. The trial court found as mitigating circumstances that the defendant was only seventeen at the time of the murder, the extent of the defendant's activities in the community, and the defendant's family support. After weighing these circumstances, the trial court sentenced the defendant to a term of sixty years, five years less than the maximum term of years and five years more than the presumptive sentence for murder.[2]

■ Although this Court is empowered to review and revise criminal sentences, we will not do so unless the sentence is "manifestly unreasonable in light of the nature of the offense and the character of the offender." Former Ind.Appellate Rule 17(B).[3]

Apparently believing that Duane Morton had taken advantage of him in a drug deal

---

**2.** Ind.Code § 35–50–2–3.

**3.** This rule is now found at Ind.Appellate Rule 7(B).

the night before, the defendant lured him into the country and shot him in the stomach. When Morton stumbled into a nearby field, the defendant pursued him. When again confronted by the defendant, Morton begged for his life, asking the defendant not to shoot him in the face, but the defendant shot him in the face anyway and watched him die. The defendant bragged to at least four people about murdering Morton, seeking to gain a fearsome reputation. The defendant has a juvenile criminal record, has demonstrated resistance to past rehabilitative attempts, and murdered out of revenge and to further his drug career.

Given the nature of this offense and the character of this offender, we decline to find the sentence imposed to be manifestly unreasonable.

We affirm the judgment of the trial court.

SHEPARD, C.J., and SULLIVAN, BOEHM, and RUCKER, JJ., concur.